FILED
2023 Oct-18 AM 11:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED
OCT 18 2023
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | No. 2:10-cr-00237-AMM-GMB |
| ) | |
| JORAN ANDREAS PETRUS ) | |
| VAN DER SLOOT, also known ) | |
| as JORAN VAN DER SLOOT, ) | |
| ) | |
| Defendant. ) | |

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America respectfully submits this Sentencing Memorandum in the above-captioned case with Defendant Joran Andreas Petrus van der Sloot (the "Defendant"). Pursuant to the Binding Plea Agreement between the parties, the United States hereby recommends that the Defendant receive a sentence of 240 months' imprisonment and be ordered to pay $25,100 in restitution. As demonstrated herein, the sentence recommended is a just and reasonable sentence befitting the Defendant's criminal history and the nature and circumstances of the offenses committed.

# TABLE OF CONTENTS

I. FACTUAL AND PROCEDURAL BACKGROUND .......................................................1

II. THE SENTENCE ..........................................................................................................4

    A. 18 U.S.C. § 3553(A) ............................................................................................4

    B. The Sentencing Guidelines ...................................................................................5

    C. Application of Sentencing Factors Under 18 U.S.C. § 3553(A) ...........................................................................................................8

    D. Restitution...........................................................................................................11

III. CONCLUSION............................................................................................................13

CERTIFICATE OF SERVICE..............................................................................................14

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

From at least 2005 through May 2010, the Defendant was a citizen of the Netherlands residing in Aruba. In May 2005, Alabama native Natalee Holloway disappeared while in the Defendant's company. Her fate and the exact circumstances surrounding her disappearance have been unknown to her family, friends, and law enforcement since May 30, 2005. In March 2010, the Defendant initiated a scheme to defraud Natalee Holloway's mother, Elizabeth Ann Holloway (the "Victim"), by demanding $250,000 in exchange for the location of Natalee Holloway's remains and information regarding her death. Believing the Defendant's offer to be legitimate and anxious to obtain additional useful information regarding her daughter, the Victim agreed to the Defendant's proposal. She and the Defendant negotiated a written agreement and, pursuant to the terms of this agreement, the Victim paid the Defendant a total of $10,000 in cash and $15,100 via wire transfer. However, the Defendant did not deliver on his promises. Instead, he knowingly and intentionally gave false information regarding Natalee Holloway—information that even the Defendant himself later described as "worthless."

On June 3, 2010, the United States obtained a Complaint seeking the Defendant's arrest for committing the federal crimes of Extortion (18 U.S.C. § 1951) and Wire Fraud (18 U.S.C. § 1343). On June 30, 2010, a federal grand jury sitting in the Northern District of Alabama initiated the instant case by returning an

1

indictment against the Defendant, charging the Defendant with one count of Extortion and one count of Wire Fraud.

In May 2010, prior to the issuance of the federal Complaint and Indictment, the Defendant left Aruba and travelled to Peru, where he murdered a Peruvian female. The Defendant was subsequently arrested in Chile and expelled to Peru to stand trial for the murder of the Peruvian female. In January 2012, a Peruvian court convicted the Defendant of that murder and sentenced him to 28 years in prison.

Following the Defendant's Peruvian conviction, the United States, pursuant to the bilateral extradition treaty between the United States and Peru (the Extradition Treaty),[1] immediately submitted a request to Peru for the provisional arrest of the Defendant, with a view toward extradition.[2] In February 2012, Federal Bureau of Investigation Agent John Drew, Jr., and Assistant United States Attorney Michael Whisonant executed before this Court, in the presence of United States Magistrate Judge T. Michael Putnam, sworn Affidavits in support of the Defendant's extradition from Peru. Shortly thereafter, in March 2012, the United States submitted its formal request to Peru for the Defendant's extradition, pursuant to the Extradition Treaty. In March 2014, following proceedings in Peru, Peru granted the United States'

---

[1] Extradition Treaty Between the United States of America and the Republic of Peru, U.S.-Peru, July 26, 2001, S. TREATY DOC. NO. 107-6 (2002).

[2] Article X(1) of the Extradition Treaty provides that Peru "may postpone the extradition proceedings against, or the surrender of, a person who is being prosecuted or who is serving a sentence in that State. The postponement may continue until the prosecution of the person sought has been concluded or until such person has served any sentence imposed."

extradition request but, pursuant to the Extradition Treaty, deferred the Defendant's surrender until the completion of his Peruvian sentence in June 2038.

In 2021, while incarcerated in Peru, the Defendant was convicted of trafficking cocaine into his prison. This conviction resulted in an additional sentence of 18 years, which was ordered to be added to the Defendant's original 28-year term of incarceration. Because Peruvian law prohibits prison sentences from exceeding a total of 35 years (unless given a life sentence), the Defendant is currently scheduled for release from prison in Peru on or about June 10, 2045 (35 years after his original arrest in Peru).

In or around late 2022, due to the ages and health conditions of key witnesses in the case, the United States decided to invoke a provision in the Extradition Treaty that provides, "in exceptional cases," for the temporary surrender of a fugitive "who is being proceeded against or is serving a sentence in" Peru.[3] Accordingly, in January 2023, the United States presented Peru with a request, pursuant to the Extradition Treaty, for the Defendant's temporary surrender. In May 2023, Peru granted the United States' request and agreed to temporarily surrender the Defendant to the United States for the purpose of allowing the Defendant to stand trial on the pending Indictment, provided that the Defendant be returned to Peru immediately after this case concludes to complete the remaining term of his Peruvian sentences.

---

[3] Extradition Treaty, Art. X(2).

3

The Defendant was temporarily surrendered to U.S. authorities in Peru and brought to the United States, where he was taken into federal custody, on June 8, 2023. On June 9, 2023, United States Magistrate Judge Gray Borden presided over the Defendant's arraignment, with the Defendant and his counsel[4] present. At that proceeding, Magistrate Judge Borden ordered that the Defendant be detained pending trial. The Defendant has been in federal custody since that time.

The United States and the Defendant have reached an agreement on the terms of a binding plea. Among other things, the plea agreement provides that the Defendant provide truthful and accurate information regarding Natalee Holloway's disappearance in 2005 and the conduct charged in the Indictment. The Defendant made this proffer on October 3, 2023. In the plea agreement, United States agrees to a 240-month sentence for the conduct charged in the Indictment, to be run concurrently with the Defendant's Peruvian sentences.

## II.   THE SENTENCE

### A. 18 U.S.C. § 3553(a)

The sentencing process is guided by the factors set forth in 18 U.S.C. § 3553(a), which provides, in part:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed-

---

[4] On May 15, 2023, the Court appointed the Federal Public Defender for the Northern District of Alabama to represent the Defendant.

4

>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [;]
> (5) any pertinent policy statement [;]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

There is no requirement that the Court engage in a detailed, step-by-step analysis of every factor. *See United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005); *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005) ("when the district court considers the factors of § 3553(a), it need not discuss each of them . . . an acknowledgment by the district court that it has considered the defendant's argument and the factors in § 3553(a) is sufficient").

## B. The *United States Sentencing Guidelines*

Although the United States Sentencing Guidelines are not mandatory following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), they remain "the starting point and the initial benchmark" in determining the appropriate sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines

5

as written "reflect the fact that the Sentencing Commission examined tens of thousands of sentences," and recognized that many "can differ as to how best to reconcile the disparate ends of punishment." *Rita v. United States*, 551 U.S. 338, 349 (2007). The "result is a set of Guidelines that seek to embody the Section 3553(a) considerations, both in principle and in practice." *Id.* at 350. Thus, "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve" those statutory objectives. *Id.*

Under the Guidelines, the Defendant is responsible both for his criminal conduct and for all conduct relevant to the offense. *See* U.S.S.G. § 1B1.3 (in calculating the base offense level, specific offense characteristics, cross references in Chapter Two, and adjustments in Chapter Three, the Court is to consider all relevant conduct). The Eleventh Circuit "broadly interprets the provisions of the relevant conduct guideline." *United States v. Behr*, 93 F.3d 764, 765 (11th Cir. 1996). Relevant conduct may include acts not contained within the charging instrument. *See United States v. Iganancio Munio*, 909 F.2d 436, 438-39 (11th Cir. 1990). The Guidelines direct the Court to consider all acts that the Defendant "committed, aided, abetted, counseled, commanded, induced, procured or willfully caused," U.S.S.G. § 1B1.3(a)(1)(A), as well as "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity," *id.* §

1B1.3(a)(1)(B). "[A]ll harm" that resulted from such conduct is attributed to the Defendant. U.S.S.G. § 1B1.3(a)(3).[5]

Here, the Defendant has waived his right to have the United States Probation Office prepare a full pre-sentencing investigation report. However, the United States Probation Office has provided the parties with its calculation of the Defendant's applicable offense level and criminal history under the Guidelines:

(1) a base offense level of 9 under U.S.S.G. § 2B3.3(a);
(2) an increase of 10 levels for the amount of the intended loss ($250,000) under U.S.S.G. § 2B3.3(b);
(3) an increase of 2 levels for a vulnerable victim under U.S.S.G. § 3A1.1(b)(1); and
(4) a decrease of 3 levels for acceptance of responsibility under U.S.S.G. § 3E1.1.

Therefore, the offense conduct and offense characteristics yield a total offense level of 18. The United States and the Defendant agree that this is the appropriate offense level under the Guidelines. The United States Probation Office calculated the Defendant's Criminal History to be a Category III. The United States and the Defendant also agree that this is the appropriate Criminal History Category under the Guidelines. If the Court accepts the United States Probation Office's analysis,

---

[5] Relevant conduct is so broadly defined that even the Supreme Court has held that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by the preponderance of the evidence." *United States v. Watts*, 519 U.S. 148, 157 (1997); *see also United States v. Hasson*, 333 F.3d 1264, 1279 n.19 (11th Cir. 2003) ("[S]entencing courts may consider both uncharged and acquitted conduct in determining the appropriate sentence."); *United States v. Behr*, 93 F.3d 764, 765–66 (11th Cir. 1996) (even conduct that took place outside a relevant statute of limitations period may be factored into the loss calculation for sentencing purposes).

7

the advisory Guideline range for the Defendant's conduct would be 33 to 41 months.

### C. <u>Application of Sentencing Factors under 18 U.S.C. § 3553(a)</u>

Having correctly calculated the applicable Guideline range, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing set forth in 18 U.S.C. § 3553(a). The requirement is "not merely that a sentencing court when handing down a sentence be stingy enough to avoid one that is too long, *but also that it be generous enough to avoid one that is too short.*" *United States v. Irey*, 612 F.3d 1160, 1197 (11th Cir. 2010) (*en banc*) (emphasis added). The United States submits that the advisory Guideline range does not appropriately address the Defendant's conduct in this case. Rather, as set forth in more detail below, the United States submits a sentence of 240 months' imprisonment is just, reasonable, and would also achieve the purposes of sentencing set forth in Section 3553(a).

The recommended sentence of 240 months in prison appropriately reflects "[t]he nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). This Defendant is unlike many defendants that come before the Court charged with a $250,000 fraud. In addition to being the type of person who would take advantage of a mother who has been searching for her missing child for five years, this Defendant—in separate incidents—murdered

8

two young females.[6] Moreover, while serving time in Peru for one of these violent murders, the Defendant was convicted of trafficking cocaine into his prison. Considering the history and characteristics of the Defendant, the United States asserts that an appropriate punishment well-exceeds the 33-to-41-month range recommended by the Guidelines.

The recommended sentence also "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Those considerations reflect "the 'just deserts' concept, which carries the need for retribution, the need to make the punishment fit the crime, and the need not just to punish but to punish justly." *Irey*, 612 F.3d at 1206. A sentence of 240 months' imprisonment is admittedly lengthy; yet the impact of the Defendant's crimes has been, and will continue to be, substantial. The Eleventh Circuit has explained that "[b]ecause the punishment should fit the crime, the more serious the criminal conduct is the greater the need for retribution and the longer the sentence should be. The seriousness of a crime varies directly with the harm it causes or threatens. It follows that the greater the harm the more serious the crime, and the longer the sentence should be." *Id.*

---

[6] A recording and transcript of the Defendant's proffer interview with the FBI on October 3, 2023, and Victim Impact Statements from Beth Holloway and Dave Holloway are attached to the Supplement to this Sentencing Memorandum.

9

Here, the Defendant knowingly and intentionally preyed upon every parent's worst nightmare: the loss of a child. By 2010, it was well-known that Natalee Holloway was last seen in the company of the Defendant. But, for five years, the Defendant had repeatedly refused to provide useful or truthful information to anyone regarding her disappearance. After five years, with ongoing search efforts still having produced no concrete information as to Natalee Holloway's fate, the Defendant chose to further exacerbate the Victim's pain—ignoring the expected emotional impact and harm that his actions would cause. In committing the crimes of extortion and wire fraud, the Defendant chose greed over the Victim's grief. Under these circumstances, a 240-month term of incarceration is warranted.

The Court's recognition of the seriousness of the offense would also meet the sentencing goal of general deterrence. A lengthy sentence should be imposed so that others considering preying upon those looking for a glimmer of hope or simply mere closure will consider the possibility of a very lengthy federal prison sentence before they choose to embark on a similar criminal scheme.

Specific deterrence is also a consideration. A significant sentence will send an appropriate message that the Defendant's outrageous conduct, for which he has exhibited no remorse, will not be condoned. The United States understands that the Defendant's Peruvian sentences will end in approximately 22 years. Nevertheless, the United States submits that the recommended sentence of 240 months on the

charged conduct ensures that the Defendant will serve *at least* that amount of time, despite any future change to his Peruvian sentences (of which the United States—or the Court—has no control). Thus, the agreed sentence meets the sentencing goals of both general and specific deterrence.

### D. Restitution

The Defendant has pled guilty to offenses "against property under [Title 18] . . . including . . . offense[s] committed by fraud or deceit" for which "an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1)(A)(ii), (c)(1)(B). Thus, the Mandatory Victims Restitution Act ("MVRA") requires the Court to order the Defendant to pay restitution, unless "the number of victims is so large as to make restitution impracticable" or "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663(a), (c)(3). Neither of these exceptions applies to the Defendant.

The Eleventh Circuit has explained that, "considering the Mandatory Victims Restitution act as a whole," the statute "directs the district court to order restitution in certain cases." *United States v. Puentes*, 803 F.3d 597 606 (11th Cir. 2015) (explaining that, where an offense is covered by the MVRA, the restitution portion of a defendant's sentence cannot be mitigated based on his substantial assistance to

11

the government). "Reading the MVRA as a whole, it is clear that Congress intended to sharply limit the district court's discretion over restitution." *Id.* at 607 (addressing this principle in the context of finding that that substantial assistance motions are not listed in 18 U.S.C. § 3664(o) as a method by which courts can modify a restitution order).[7] The Defendant does not dispute that he received $25,100 from the Victim. Accordingly, the Court should order the Defendant to pay restitution in the amount of $25,100 to the Victim.

---

[7] Although the *Puentes* panel was faced with a different procedural posture, its holding and reasoning are clear. Where the MVRA applies, the Court *must* impose restitution consistently with the Act.

## III. CONCLUSION

Based on the foregoing, the United States submits that a sentence of 240 months' imprisonment and restitution in the amount of $25,100 is appropriate and warranted for the Defendant.

Respectfully submitted this the 18th day of October, 2023.

                                            PRIM F. ESCALONA
                                            United States Attorney

                                            LLOYD C. PEEPLES, III
                                            Assistant United States Attorney

                                            CATHERINE L. CROSBY
                                            Assistant United States Attorney

**UNITED STATES ATTORNEY'S OFFICE**
**Northern District of Alabama**
1801 Fourth Avenue North
Birmingham, Alabama 35203
Lloyd.Peeples@usdoj.gov
Catherine.Crosby@usdoj.gov
205.244.2001

## CERTIFICATE OF SERVICE

I certify that on October 18, 2023, I filed this document electronically with the United States District Court for the Northern District of Alabama using the CM/ECF system, which transmits a copy to the document to parties of record in this case.

PRIM F. ESCALONA
United States Attorney

*/s/ Lloyd C. Peeples, III*
LLOYD C. PEEPLES, III
Assistant United States Attorney
