1              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ALABAMA
2                   SOUTHERN DIVISION


3


4   UNITED STATES OF AMERICA,      2:10-cr-237-AMM-GMB-1


5                  Plaintiff,      October 18, 2023
                                   9:30 a.m.
6   VS.                            Birmingham, Alabama


7   JORAN ANDREAS PETRUS VAN DER SLOOT,


8                  Defendant.


9   * * * * * * * * * * * * * * * * * * * * * * * * *


10

                  REPORTER'S OFFICIAL TRANSCRIPT OF
11                   PLEA/SENTENCING HEARING

12            BEFORE THE HONORABLE ANNA M. MANASCO
                 UNITED STATES DISTRICT JUDGE
13


14


15


16


17


18


19


20


21


22


23

    Proceedings recorded by OFFICIAL COURT REPORTER, qualified
24  pursuant to 28 U.S.C. 753(a) & Guide to Judiciary Policies and
    Procedures, Vol. VI, Chapter III, D.2.  Transcript produced by
25  computerized stenotype.

```
 1                  * * * * *
                A P P E A R A N C E S
 2                  * * * * *

 3  FOR THE UNITED STATES:

 4  Lloyd Peeples
    Catherine Crosby
 5  U.S. Attorney's Office
    1801 4th Avenue North
 6  Birmingham, Alabama  35203

 7

 8  FOR THE DEFENDANT:

 9  Kevin Butler
    James Gibson
10  Alexandra Darby
    Federal Public Defender's Office
11  Northern District of Alabama
    505 20th Street North
12  Suite 1425
    Birmingham, Alabama  35203
13

14  COURTROOM DEPUTY:  Frankie Sherbert

15  COURT REPORTER:  Teresa Roberson, RPR, RMR

16  PROBATION:  Amy Ledbetter

17

18

19

20

21

22

23

24

25
```

```
                            * * * * *
1
                        P R O C E E D I N G S
2                           * * * * *

3          THE COURT:  Good morning, everyone.  All right.  We

4    are here in Case Number 2:10-cr-237, United States vs. van der

5    Sloot.

6          Beginning with defense counsel, would everyone

7    please state their appearances and introduce those with you at

8    counsel table.

9          MR. BUTLER:  Yes, Your Honor.  Kevin Butler on

10   behalf of Mr. van der Sloot, who is present, sitting with me

11   at counsel table is James Gibson, as well as Alexandra Darby.

12   Behind me is my legal team.

13         THE COURT:  Thank you.

14         MR. PEEPLES:  Lloyd Peeples on behalf of the United

15   States.  With me here at counsel table is United States

16   Attorney Prim Escalona, Catherine Crosby, AUSA and then the

17   members of the Holloway family.  Behind us is our legal team

18   and members of the FBI.

19         THE COURT:  Great.  Good morning.  Thank you.

20   Mr. van der Sloot is in court with his attorneys because I

21   have been advised that he desires to withdraw his earlier plea

22   of not guilty and wishes to enter a plea of guilty.

23         MR. BUTLER:  That's correct, Your Honor.

24         THE COURT:  Mr. van der Sloot, you are allowed to do

25   that.  But before I can take a guilty plea from you, there are
```

1   certain questions that I have to ask you, and this requires

2   that you be placed under an oath.  While you are under the

3   oath, it is really important that your answers are full and

4   complete and accurate, because if they're not, the government

5   may prosecute you for perjury.  Do you understand?

6        DEFENDANT VAN DER SLOOT:  Yes, ma'am.

7             JORAN VAN DER SLOOT SWORN

8        THE COURT:  All right.  Mr. Butler, would you please

9   accompany your client to the lectern for this portion of the

10  proceedings.

11       MR. BUTLER:  I will, Your Honor.

12       THE COURT:  All right.  Mr. van der Sloot, if

13  anything happens here today that you don't understand, I want

14  you to put your hand up, stop me, get my attention, either

15  I'll clear it up for you, or I'll give you a minute to speak

16  privately with your attorney so that he can clear it up for

17  you.  Do you understand?

18       DEFENDANT VAN DER SLOOT:  Yes, ma'am.

19       THE COURT:  Okay.  I'll first ask you a series of

20  questions that we ask every defendant who pleads guilty.

21       Will you state your full name for the record.

22       DEFENDANT VAN DER SLOOT:  Joran Andreas Petrus van

23  der Sloot.

24       THE COURT:  And your birth date.

25       DEFENDANT VAN DER SLOOT:  The 6th of August, 1987.

1          THE COURT:  And how far did you go in school,

2    Mr. van der Sloot?

3          DEFENDANT VAN DER SLOOT:  I finished high school.

4          THE COURT:  Can you read, write, and understand

5    English?

6          DEFENDANT VAN DER SLOOT:  Yes, ma'am.

7          THE COURT:  Did you read, complete and sign the

8    guilty plea advice of rights certification?

9          DEFENDANT VAN DER SLOOT:  Yes, ma'am.

10         THE COURT:  Mr. Butler, would you please file the

11   certification.

12         MR. BUTLER:  Yes, Your Honor.  (Indicating).

13         THE CLERK:  (Indicating).

14         MR. BUTLER:  Filed.

15         THE COURT:  All right.  Mr. van der Sloot, during

16   the past forty-eight hours, have you taken any drugs,

17   prescription or otherwise, or consumed any substance that

18   might affect your ability to understand these proceedings?

19         DEFENDANT VAN DER SLOOT:  No, ma'am.

20         THE COURT:  All right.  And are you suffering from

21   any mental or emotional impairment or physical illness that

22   might affect your ability to understand these proceedings?

23         DEFENDANT VAN DER SLOOT:  No, ma'am.

24         THE COURT:  Have you received a copy of the

25   indictment pending against you?

1          DEFENDANT VAN DER SLOOT:  Yes, ma'am.

2          THE COURT:  All right.  Mr. Butler, have you and

3    your colleagues had adequate time to investigate the charges

4    against Mr. van der Sloot and to consult with him?

5          MR. BUTLER:  I have, Your Honor.

6          THE COURT:  Mr. van der Sloot, have you had adequate

7    time to consult with your attorneys?

8          DEFENDANT VAN DER SLOOT:  Yes, ma'am.

9          THE COURT:  I know that you did not choose these

10   attorneys, they were appointed for you by the Court.  Are you

11   fully satisfied with the representation and the advice that

12   you have received from them?

13         DEFENDANT VAN DER SLOOT:  Yes, fully, ma'am.

14         THE COURT:  Mr. van der Sloot, I want to go over

15   with you certain substantive rights that you have that I need

16   to be sure that you understand.

17         You are presumed to be not guilty of the charges

18   that are pending against you.  That presumption, standing

19   alone, is sufficient to assure that you will not be convicted

20   unless you either plead guilty or you're found guilty after a

21   trial.

22         You have the right to stand on your earlier plea of

23   not guilty.  And if you do that, you will be entitled to a

24   trial before a duly selected jury.

25         At any trial that would occur in your case, you

would not be convicted unless the United States first proves

beyond a reasonable doubt all of the elements of the charges

against you.  And we'll talk about those elements in just a

minute.

Throughout all proceedings -- before, during and

after trial -- you have the right to be represented by an

attorney who must be constitutionally adequate.  You're

entitled to confront and cross-examine witnesses for the

United States; you're entitled to call witnesses of your own;

and to use the subpoena power of the Court to compel witnesses

to testify on your behalf.  You're entitled to testify if you

choose to do so, but if you may not be forced to testify

against yourself.

If you plead guilty, you will give up some of the

rights that I just listed.  Specifically, you will give up the

presumption that you're not guilty; the right to a trial by

jury; the right to proof beyond a reasonable doubt; the right

to confront and cross-examine witnesses for the government,

and to call witnesses of your own; and you will give up the

right to refuse to testify.  If you plead guilty, you do not

give up the right to have an attorney represent you.

Because you are not a United States citizen,

pleading guilty today means that you may be immediately and

automatically removed from the United States, that you may be

denied admission here in the future, and that you may be

1  forever denied United States citizenship.

2          Do you understand your rights?

3          DEFENDANT VAN DER SLOOT:  Yes, ma'am.

4          THE COURT:  Do you understand what rights you're

5  giving up if you plead guilty?

6          DEFENDANT VAN DER SLOOT:  I do.

7          THE COURT:  Before you can be found guilty of the

8  charge of interference with commerce by extortion, as charged

9  in Count One, the government must prove beyond a reasonable

10  doubt every element of that charge.  Those elements are:

11          One, that you caused Elizabeth Holloway to part with

12  property;

13          Two, that you did so knowingly by extortion;

14          Three, that the extortionate transaction delayed,

15  interrupted or affected interstate commerce.

16          The range of punishment for this offense is as

17  follows:

18          One, custody for a period of not more than twenty

19  years;

20          Two, a fine of not more than two hundred and fifty

21  thousand dollars;

22          Three, both one and two, so custody and the fine;

23          Four, supervised release for a term of not more than

24  three years;

25          Five, a special assessment fee of one hundred

dollars.

Before you can be found guilty of wire fraud, as charged in Count Two, the government must prove beyond a reasonable doubt every element of that charge.  Those elements are:

One, that you knowingly devised or participated in a scheme to defraud Beth Holloway by using false or fraudulent pretenses, representations or promises;

Two, that the false pretenses, representations, or promises were about a material fact;

Three, that you acted with the intent to defraud; and

Four, that you transmitted or caused to be transmitted some communication in interstate commerce to help carry out your scheme to defraud.

The range of punishment for this charge is as follows:

One, custody for a period of not more than twenty years;

Two, a fine of not more than two hundred and fifty thousand dollars;

Three, both one and two, so custody and the fine;

Four, supervised release for a term of not more than three years; and

Five, a special assessment fee of one hundred

1   dollars.

2          The indictment includes a notice of forfeiture.  So,

3   if you plead guilty, you will be required to forfeit to the

4   government any property, real property or personal property,

5   which constitutes or is derived from proceeds that are

6   traceable to the offenses alleged in the indictment.

7          You also will be required to make restitution to the

8   victim of the offenses to which you plead guilty.

9          Mr. Peeples, do you agree that the Court has

10  accurately informed Mr. van der Sloot of the possible range of

11  punishment for the charges in this case?

12         MR. PEEPLES:  Yes, Your Honor, we do.

13         THE COURT:  Mr. Butler, do you so agree?

14         MR. BUTLER:  I do.

15         THE COURT:  Mr. van der Sloot, do you understand the

16  charges against you?

17         DEFENDANT VAN DER SLOOT:  Yes, ma'am.

18         THE COURT:  And do you understand the possible range

19  of punishment?

20         DEFENDANT VAN DER SLOOT:  I do, ma'am.

21         THE COURT:  Okay.  I understand that Mr. van der

22  Sloot and the United States have reached a plea agreement.

23         MR. BUTLER:  We have, Your Honor.

24         THE COURT:  All right.  Mr. Peeples, is the United

25  States prepared to file the plea agreement with the Court?

1        MR. PEEPLES:  Yes, Your Honor, we are.

2        THE COURT:  All right.  Please file it.

3        MR. PEEPLES:  (Indicating).

4        THE CLERK:  (Indicating).

5        THE COURT:  Thank you.  All right.  This plea

6   agreement is signed by Mr. van der Sloot, by Mr. Butler and

7   Mr. Gibson, as his attorneys, and by Mr. Peeples and

8   Ms. Crosby on behalf of the United States.

9        Mr. Peeples, although you filed this plea agreement

10  for the first time today, do you acknowledge that you

11  previously shared it with the Court so that I could study and

12  evaluate its terms?

13        MR. PEEPLES:  That's correct, Your Honor.

14        THE COURT:  Mr. Butler, do you acknowledge the same?

15        MR. BUTLER:  Yes, Your Honor.

16        THE COURT:  Mr. Peeples, does this written document

17  contain all the terms of any bargain or agreement on which

18  Mr. van der Sloot might be relying today?

19        MR. PEEPLES:  It does, Your Honor.

20        THE COURT:  Mr. Butler, do you and Mr. van der Sloot

21  have a copy of the plea agreement in front of you?

22        MR. BUTLER:  We do, Your Honor.

23        THE COURT:  Did you have a sufficient opportunity to

24  discuss it with Mr. van der Sloot before he signed it?

25        MR. BUTLER:  I did, Your Honor.

1          THE COURT:  Does the written plea agreement set

2    forth everything he may be relying on today in terms of a

3    bargain or a deal with the government?

4          MR. BUTLER:  It does, Your Honor.

5          THE COURT:  Were all formal offers by the government

6    conveyed to him?

7          MR. BUTLER:  Yes, Your Honor.

8          THE COURT:  Did he have any questions for you about

9    the agreement that you did not feel you were able to answer to

10   his satisfaction?

11         MR. BUTLER:  I was able to answer all questions to

12   his satisfaction.

13         THE COURT:  All right.  Did you discuss with him the

14   provisions that waive his right to appeal and to collaterally

15   attack his conviction?

16         MR. BUTLER:  I did, Your Honor.

17         THE COURT:  All right.  Mr. van der Sloot, before

18   you signed the plea agreement, did you have a sufficient

19   opportunity to discuss it with your attorneys?

20         DEFENDANT VAN DER SLOOT:  Yes, ma'am.

21         THE COURT:  Do you understand that by entering into

22   the plea agreement and entering a plea of guilty today that

23   you will give up your right to appeal or collaterally attack

24   your conviction?

25         DEFENDANT VAN DER SLOOT:  I do, ma'am.

1       THE COURT:  Do you understand that even if the laws

2  of the United States change with respect to the offenses that

3  we're here about today that you will have no right to withdraw

4  the guilty plea that you're in the process of entering?

5       DEFENDANT VAN DER SLOOT:  Yes, ma'am.

6       THE COURT:  Okay.  All right, Mr. van der Sloot, the

7  factual allegations relevant to the conduct and offenses

8  charged in the indictment appear on Pages 3, 4, 5, and 6 of

9  the plea agreement.

10       Do you agree that those facts are substantially

11  correct?

12       DEFENDANT VAN DER SLOOT:  Yes, ma'am.

13       THE COURT:  Is there anything in those facts that

14  you say is not correct?

15       DEFENDANT VAN DER SLOOT:  No, ma'am.

16       THE COURT:  Did you do the things that are set forth

17  in those factual allegations?

18       DEFENDANT VAN DER SLOOT:  I did, ma'am.

19       THE COURT:  Okay.  All right, Mr. van der Sloot,

20  does the written plea agreement set forth all the terms of

21  your deal with the government?

22       DEFENDANT VAN DER SLOOT:  Yes, ma'am.

23       THE COURT:  Did you sign it?

24       DEFENDANT VAN DER SLOOT:  Yes, ma'am.

25       THE COURT:  Do you have any questions about it?

1              DEFENDANT VAN DER SLOOT:  No, ma'am.

2         THE COURT:  Has anyone promised you anything that is

3    not in that written agreement to get you to plead guilty?

4              DEFENDANT VAN DER SLOOT:  No, ma'am.

5         THE COURT:  Has anyone threatened you in any way to

6    get you to plead guilty?

7              DEFENDANT VAN DER SLOOT:  No, ma'am.

8         THE COURT:  Are you pleading guilty of your own free

9    will because you are guilty of the conduct charged?

10             DEFENDANT VAN DER SLOOT:  Yes, ma'am.

11        THE COURT:  Mr. van der Sloot, the plea agreement

12   that you have made with the United States is a binding plea

13   agreement under Federal Rule of Criminal Procedure

14   11(c)(1)(C).  This means that under federal law I may either

15   accept the agreement in full, reject the agreement in full, or

16   defer a decision until a later date.  I cannot accept part of

17   your agreement and reject part of your agreement.

18        If I accept your binding plea agreement today, I

19   must accept the custodial term to which you and the government

20   have agreed.  Do you understand?

21             DEFENDANT VAN DER SLOOT:  Yes, ma'am.

22        THE COURT:  All right.  Mr. van der Sloot, under

23   federal law, I cannot accept your plea agreement just because

24   you and the government have agreed to it.  I must evaluate the

25   terms of the plea agreement to ensure that they are lawful and

1   to ensure that the stipulated sentence is a sufficient and

2   reasonable sentence.  Do you understand?

3           DEFENDANT VAN DER SLOOT:  Yes, ma'am.

4           THE COURT:  Do you understand that if I accept your

5   plea agreement today, I also will impose your sentence today?

6           DEFENDANT VAN DER SLOOT:  I do, ma'am.

7           THE COURT:  Okay.  Mr. van der Sloot, under the

8   terms of your plea agreement, in exchange for the government's

9   agreement to recommend to the Court the sentence to which you

10  and the government agreed, which we'll talk about in just a

11  minute, you agreed to do several things.  You agreed to

12  honestly and completely assist law enforcement agencies with

13  respect to their investigation of your scheme to extort and

14  defraud Beth Holloway.

15          You also agreed to honestly and completely assist

16  law enforcement agencies with respect to their investigation

17  of the disappearance of Ms. Holloway's daughter, Natalee

18  Holloway, on or about May 29th, 2005.

19          You agreed to provide all the information you know

20  about Natalee's disappearance.  This is often called a proffer

21  or debrief.

22          You further agreed that Natalee Holloway's parents

23  would be allowed to hear in real time your debrief with law

24  enforcement about the disappearance of their daughter, and you

25  agreed that after that debrief, the United States would

determine, to the extent that it could, whether the

information you provided was truthful and complete.  And you

agreed that as just one part of that determination you would

submit to a polygraph examination.

You agreed that if the United States determined on

the basis of the polygraph or any other available

investigatory information, including the government's

consultation with Ms. Holloway, that your debrief was not

complete or truthful, the United States had the sole option to

void your plea agreement and your deal would be off.

Did you fully understand those terms of your plea

agreement?

DEFENDANT VAN DER SLOOT:  Yes, ma'am.

THE COURT:  Okay.  It is my understanding that

consistent with the terms of your plea agreement that you made

your proffer and you truthfully provided all the information

you know.  I'll ask the government about that in a minute.

But I'm asking you about it now.  Did you do that?

DEFENDANT VAN DER SLOOT:  Yes, ma'am.

THE COURT:  All right.  Mr. Butler, is there

anything you would like to say specifically about your

client's proffer?

MR. BUTLER:  No, Your Honor.

THE COURT:  Okay.  Mr. Peeples, is the United States

satisfied that Mr. van der Sloot fulfilled his obligations

```
 1   under the plea agreement?
 2        MR. PEEPLES:  Your Honor, based on the information
 3   the defendant provided, the results of the polygraph
 4   examination, and the information obtained during the FBI's
 5   extensive investigation of this matter, we believe that the
 6   defendant has complied with his obligations under the plea
 7   agreement.
 8        THE COURT:  Thank you.  As a part of that
 9   determination, did you consult with the Holloway family?
10        MR. PEEPLES:  Yes, Your Honor, we did.
11        THE COURT:  All right.  I'll ask you again at
12   sentencing, but for the purpose of my present determination
13   whether to accept Mr. van der Sloot's guilty plea, is there
14   anything else you would like to say about his proffer?
15        MR. PEEPLES:  No, Your Honor.
16        THE COURT:  Mr. Butler, are you satisfied that
17   Mr. van der Sloot fully understands the charges against him
18   and the consequences of a guilty plea?
19        MR. BUTLER:  I am fully satisfied that he
20   understands.
21        THE COURT:  And that his plea is knowing and
22   voluntary?
23        MR. BUTLER:  Yes, Your Honor.
24        THE COURT:  Mr. Peeples, are you so satisfied?
25        MR. PEEPLES:  Yes, Your Honor, we are.
```

1          THE COURT:  Mr. van der Sloot, do you understand

2     that this is the last time you may rest on your plea of not

3     guilty?

4          DEFENDANT VAN DER SLOOT:  Yes, Your Honor.

5          THE COURT:  Do you understand everything we have

6     gone over?

7          DEFENDANT VAN DER SLOOT:  Yes, ma'am.

8          THE COURT:  All right.  Mr. van der Sloot, to the

9     offense of interference with commerce by extortion as charged

10    in Count One, how do you plead?

11         DEFENDANT VAN DER SLOOT:  Guilty.

12         THE COURT:  To the offense of wire fraud as charged

13    in Count Two, how do you plead?

14         DEFENDANT VAN DER SLOOT:  Guilty.

15         THE COURT:  I find in United States vs. van der

16    Sloot that Mr. van der Sloot is fully competent and capable of

17    entering an informed plea, that he's aware of the nature of

18    the charges and the consequences of a plea, and that his plea

19    is knowing, voluntary and supported by an independent basis in

20    fact containing each of the essential elements of the

21    offenses.  I therefore accept his plea of guilty and judge him

22    to be guilty of the offenses charged.

23         Mr. van der Sloot, please be seated.

24         All right.  We will now proceed to the sentencing

25    phase of these proceedings where I will determine whether the

sentence to which Mr. van der Sloot and the United States have agreed is a lawful, sufficient and reasonable sentence.

Mr. van der Sloot, ordinarily, United States federal law would require a probation officer to conduct a presentence investigation and to prepare a report of that investigation for the Court to consider in determining a sentence. That report would include information about your criminal history, other characteristics of you, and the calculation of the applicable range of punishment under the United States Sentencing Guidelines which are advisory guidelines for the Court to consider when imposing a sentence.

Under applicable federal law, that presentence investigation report would not be public. It would be made available to you, your attorneys, and the attorneys for the United States and to me. You would have an opportunity to challenge the factual statements in the report and the calculation of the potential sentence under the advisory guidelines.

In this case, because you and the United States have agreed to a specific sentence, and because you and the United States have voluntarily made information available to me that would ordinarily be included in the presentence investigation report, I understand that you have waived your right to a presentence investigation and a presentence investigation report.

1           I further understand that you have waived your

2    rights under Federal Rule of Criminal Procedure 32 in

3    connection with that investigation and report; is that

4    correct?

5           DEFENDANT VAN DER SLOOT:  Yes, Your Honor.

6           THE COURT:  Thank you.  Mr. Butler, I understand you

7    have written waivers to file.

8           MR. BUTLER:  I do, Your Honor.

9           THE COURT:  Would you please file them.

10          MR. BUTLER:  Your Honor, we're filing two waivers.

11   One, waiver of the presentence report; and two, waiver

12   regarding time applicable to the preparation of the

13   presentence report.  That second waiver may be unnecessary,

14   but we're doing it out of an abundance of caution.

15          THE COURT:  Thank you.

16          MR. BUTLER:  (Indicating).

17          THE CLERK:  (Indicating).

18          THE COURT:  All right.  Mr. van der Sloot, I see

19   your signatures on both of these documents.  Did you sign

20   them?

21          DEFENDANT VAN DER SLOOT:  Yes, Your Honor.

22          THE COURT:  Thank you.  All right.  Mr. van der

23   Sloot, even if you waive the presentence investigation and

24   presentence investigation report, I am required to insist on

25   it, unless I find that the information in the record before me

1    today allows me to meaningfully exercise the Court's statutory

2    sentencing authority under 18, U.S.C., Section 3553.  If I

3    make that finding, the law requires that I explain it on the

4    record today.

5           Mr. Peeples, I understand that the government has a

6    written sentencing memorandum that it would like to file to

7    provide relevant information and establish that I have

8    sufficient information to meaningfully exercise sentencing

9    authority; is that correct?

10          MR. PEEPLES:  That's correct, Your Honor.  May I

11   approach?

12          THE COURT:  Please file it.

13          MR. PEEPLES:  (Indicating).  Your Honor, for the

14   record, what the government has filed is actually two

15   documents.  The first is a sentencing memorandum which sets

16   forth the basis for the sentencing recommendation in the plea

17   agreement that's recommended by the United States.  The second

18   is a supplement to the sentencing memorandum.  And there are

19   three attachments or exhibits to that supplement.  Exhibit A

20   is a transcript and an audio portion of the proffer that the

21   defendant provided that was referenced earlier.  Exhibit B is

22   a victim impact statement from Elizabeth Ann Holloway.

23   Exhibit C is a victim impact statement from Dave Holloway.

24          THE COURT:  Thank you.

25          THE CLERK:  (Indicating).

1          THE COURT:  Mr. Peeples, I want you to explain

2   further the government's position in a minute, but for now, I

3   have a couple of specific questions about the sentencing

4   memorandum.

5          Although you filed this just now, I am not seeing it

6   for the first time today.  You shared it with me previously so

7   that I could study it carefully, and you also made it

8   available to Mr. van der Sloot and his defense attorneys; is

9   that correct?

10          MR. PEEPLES:  Yes, Your Honor.

11          THE COURT:  Mr. Butler, have you had the opportunity

12   to review before today the memorandum and the attachments that

13   the United States just filed in open court?

14          MR. BUTLER:  I have, Your Honor.

15          THE COURT:  Did you discuss it with your attorney --

16   I mean, with your client?

17          MR. BUTLER:  Yes, I did, Your Honor.

18          THE COURT:  Does he have any objections to its

19   filing?

20          MR. BUTLER:  No, Your Honor.

21          THE COURT:  Does he have any objections to its

22   substance?

23          MR. BUTLER:  No, Your Honor.  In fact, it's our

24   position that the information contained in there provides the

25   Court with adequate information in order to impose sentence in

1  support of our request to waive the PSR.

2       THE COURT:  Very well.  Thank you.  I have reviewed

3  the government's memorandum and find that I have sufficient

4  information to exercise the Court's statutory sentencing

5  authority.  I will explain in greater detail, as we proceed,

6  how I will rely on specific information and how that

7  information allows me to evaluate the sentence to which

8  Mr. van der Sloot and the government agreed.

9       But before I explain further, I would like to hear

10 further from Mr. van der Sloot and his attorney.

11      Mr. Butler, is there anything you would like to say

12 at this time in mitigation or otherwise?

13      MR. BUTLER:  Briefly, Your Honor.  Mr. van der Sloot

14 has complied with all the conditions set forth in the plea

15 agreement.  He has been full -- full, open and honest in the

16 information he's provided.

17      Subsequently, Your Honor, we would ask that the

18 Court adopt the plea agreement and impose the stipulated

19 sentence.

20      I have nothing further.

21      THE COURT:  Thank you.  Mr. van der Sloot, is there

22 anything you would like to say?

23      DEFENDANT VAN DER SLOOT:  Yes, Your Honor.  I would

24 like to take this chance to apologize to the Holloway family,

25 apologize to my own family, say that I hope that the statement

1    I provided gives at least some kind of closure to everyone

2    involved.

3           I would like to say that I'm no longer that person I

4    was back then today, I have given my heart over to Jesus

5    Christ and he strengthens me through all these proceedings

6    now.  Thank you.

7           THE COURT:  Thank you.

8           All right.  Under federal law, more particularly,

9    under the Crime Victim's Rights Act, which is found at 18,

10   U.S.C., Section 3771, crime victims have the right to be heard

11   at sentencing.  Under that law, a crime victim is defined as a

12   person directly and proximately harmed as the result of the

13   commission of a federal offense.  In a sense, crime victimizes

14   all members of the public.  Some particularly reprehensible

15   criminal conduct affects or impacts many people, including a

16   targeted victim's family, friends and even their professional

17   colleagues.  That does not automatically mean that all of the

18   affected persons are necessarily victims within the specific

19   meaning of the Crime Victim's Rights Act with an entitlement

20   to submit a statement for the Court to consider.

21          If a person does not have the right to submit a

22   statement under that act, the Court declines to consider any

23   submission that they may make, because federal sentences must

24   be based solely on information properly before the Court.

25          As I indicated in an order issued yesterday

afternoon, I received by mail, by courier and by hand-delivery

a number of victim impact statements and requests to submit

victim impact statements.  I personally reviewed all the

documents that the Court received to determine which ones I

could properly consider in imposing a sentence today.

Ultimately, I determined that I may properly

consider written and/or oral, if they elect to speak today,

victim impact statements only from the direct victim of the

extortion and wire fraud charged in the indictment, Beth

Holloway, and the members of her immediate family who could

comment on the impact of that conduct on her and relatedly on

them.  Mr. Dave Holloway, who is Natalee Holloway's father,

and Mr. Matt Holloway, who is Natalee Holloway's brother.

Accordingly, I did not accept and I have not

considered in connection with the sentence that I will impose

today any statements from other persons, including such

statements purportedly offered or offered on behalf of any

member of the Holloway family, in large part because members

of the Holloway family have submitted their own direct

statements that express the impact that they experienced in

their own words.

I have considered written statements submitted by

Beth Holloway and Dave Holloway.  And I understand that in

addition Beth Holloway would like to make an oral victim

impact statement at this time.

1    Ms. Holloway, will you please approach the lectern

2  to make your statement.

3    MS. HOLLOWAY:  Joran, for eighteen years you denied

4  killing my daughter Natalee.  Your lies, your manipulation,

5  your taunting us with fake news interviews and wild stories of

6  what happened to her have cost indescribable pain to my family

7  and to me, and the grief extends deep into my soul.

8    Now in the process of being here today and being

9  sentenced for attempting to sell Natalee's remains to me,

10  you've finally admitted that in fact you murdered her.

11    Natalee would be thirty-six years old now.  And I

12  think about what kind of doctor she would have become.  She

13  would be married; have children, my grandchildren.  But Joran

14  destroyed all of this, destroyed all of this for my family.

15  You terminated her potential.  You terminated her potential,

16  her dreams, and her possibilities when you bludgeoned her to

17  death in 2005.  You took away my son Matt, you took away his

18  big sister.  My son also has two children, he has a son and a

19  daughter, so you took away Natalee's -- you took away their

20  aunt, she would never be able to meet her niece or nephew.

21    You changed the course of our lives and you turned

22  them upside-down.  You are a killer.  And I want you to

23  remember that every time that jail cell door slams, I want you

24  to remember that.  You didn't get what you wanted from

25  Natalee, your sexual satisfaction, so you brutally killed her.

1          All I have been able to see from you, Joran, are

2     four functions of existence:  It's anger, it's a killer, it's

3     food, and it's sex.  That's all you have been able to show me,

4     Joran.

5          And I wonder about over the years about the grief

6     that your mother and your grandmother have experienced, and I

7     think about them.  And the reason why I do because I know it

8     has destroyed their lives as well knowing that they raised a

9     killer.  Your brother, everyone around you, and you are to

10    blame for their anguish and their sorrow and their shame,

11    Joran.  And you are the one now that no one in Aruba wants to

12    be and that's the black mark on the island.  No one wanted to

13    be that.

14         And, Joran, I think about now what you and I have in

15    common.  I had a daughter; you have a daughter.  So it's

16    interesting that we share that commonality, except my daughter

17    is no longer here.  I won't mention your daughter's name out

18    of respect for her young age and out of respect for her

19    privacy because she doesn't deserve it.  But, Joran, I think

20    about what if -- what if your daughter were Natalee, and what

21    if you were me, and what if her killer had bludgeoned her body

22    and gone home and got off on porn on a porn site, I think

23    about that, Joran.  And I think about what would I do and I

24    think about what would you do.  And I know what I would do, I

25    would want to kill him.

1       Extreme emotional loss and pain really can't be

2  comprehended by those who haven't had a devastating tragedy

3  like ours.

4       Also, I have suffered great professional, personal

5  financial loss.  When you killed Natalee, I lived in Aruba

6  trying to find out what happened to her.  Joran, you and I met

7  that first night of May 31st, 2005, 4:00 a.m. at the Holiday

8  Inn porte-cochere trying to get answers from you, trying

9  desperately.

10       And as I was living there in Aruba trying to find

11  these answers, I lost my job, I lost my teaching license, I

12  lost my tenure.  I had to go back to school to get my license

13  reinstated and then I had to work even harder to get my tenure

14  back.

15       So 2010, when you extorted me and tried to sell me

16  Natalee's remains, I incurred legal, investigative, and I hate

17  to say it, but I incurred killer fees.  I paid my daughter's

18  killer money.  It's shocking.  I don't think anyone could

19  really wrap their minds around what that means.

20       Your life was pretty much over in 2010 when you

21  extorted me, and then you killed another beautiful young woman

22  in Peru, five years to the day after you killed Natalee.  Even

23  though you have finally confessed and confirmed that you are

24  my daughter's killer, you can't be tried here, you can't be

25  tried here for her murder.  But I do employ, implore this

 1  Court to give you the maximum sentence possible for the wire

 2  fraud and extortion and demand that you make financial

 3  restitution.  You should never profit from this ever again.

 4          Joran, while you are living your life in prison --

 5  and by the way, you look like hell, Joran.  I don't see how

 6  you're going to make it.

 7          I will live the rest of my life with the wonderful

 8  memories -- with the wonderful memories of a beautiful young

 9  lady that had her whole life in front of her.  Natalee will be

10  eighteen forever in my heart.  She was smart, she was so

11  accomplished, and I have no doubt she would have made all her

12  dreams come true.  She really would have.

13          Matt, we did it, honey.

14          MR. MATT HOLLOWAY:  We did it.

15          MS. HOLLOWAY:  We did it.  The hope that filled her

16  heart fills mine, it brought me here today, it will see me

17  through everyday, and I will wake up every morning

18  remembering, I will remember who Natalee was.  Thank you.

19          Thank you, Your Honor.

20          THE COURT:  Thank you.

21          Mr. Peeples, are you aware that Matt Holloway or

22  Dave Holloway would like to speak?

23          MR. PEEPLES:  No, Your Honor, they don't.

24          THE COURT:  Thank you.  All right.  Mr. Peeples, I

25  will ask you shortly for more information about the

1    government's position, but I have a few more questions about

2    Mr. van der Sloot's proffer.

3              I asked you once before in connection with my

4    decision to accept his guilty plea, but I'm asking you again

5    now in connection with my determination whether to accept the

6    plea agreement and impose the stipulated sentence, is there

7    anything you would like to say on behalf of the United States

8    about his proffer?

9              MR. PEEPLES:  Your Honor, other than what we said

10   before, no.

11             THE COURT:  Okay.  All right.  Mr. van der Sloot,

12   although you waived a presentence investigation and

13   presentence investigation report, the United States Probation

14   Office has determined that sufficient information is publicly

15   available from which it can calculate the advisory guideline

16   range for your sentence.  I have carefully considered this

17   information which is as follows:

18             The offenses with which you are charged are

19   referenced in Appendix A of the United States Sentencing

20   Commission's Guidelines Manual.  The appropriate Guideline is

21   Section 2B3.3.

22             Pursuant to Section 2B3.3(a), the base offense level

23   is nine.  Pursuant to Section 2B3.3(b)(1), ten levels have

24   been added based on a loss amount of two hundred and fifty

25   thousand dollars.  Because the conduct involved a vulnerable

victim, as defined in the Guidelines Section 3A1.1, comment
n2, an additional two levels have been added resulting in an
adjusted offense level of twenty-one.

Because you pleaded guilty, you receive a three
level reduction for acceptance of responsibility pursuant to
Guideline Section 3E1.1, and the total offense level becomes
eighteen.

You have two previous criminal convictions that are
assigned three points each pursuant to Guideline Section
4A1.1(a).  Therefore, based on six criminal history category
points, the criminal history category is III.  The resulting
advisory guideline range of imprisonment is thirty-three to
forty-one months.  The fine range is ten thousand dollars to
one hundred thousand dollars; and the supervised release term
is one year to three years.

Mr. Butler, do you agree that I have correctly
calculated the guideline range?

MR. BUTLER:  I do, Your Honor.

THE COURT:  Mr. Peeples, does the United States so
agree?

MR. PEEPLES:  We do, Your Honor.

THE COURT:  All right.  Under the Supreme Court's
instructions in United States vs. Booker, I have consulted the
Sentencing Guidelines and I have taken them into account on
the issue of the appropriate range of sentence to be imposed

 1    in this case.

 2             Mr. van der Sloot, I also have considered the

 3    specific sentence to which you and the United States agreed in

 4    the binding plea agreement:  A custodial sentence of two

 5    hundred forty months with credit for time already spent in

 6    custody in the United States from June 8th, 2023 to run

 7    concurrently with your currently-imposed sentences in Peru, to

 8    be followed by a period of supervised release for three years,

 9    subject to this court's standard conditions and to any special

10    conditions that I may impose.

11             In addition, you agreed in the binding plea

12    agreement to a requirement that you pay restitution to Beth

13    Holloway in the amount of twenty-five thousand one hundred

14    dollars; that you comply with the agreed provisions regarding

15    the forfeiture of property; and that you pay the United States

16    the mandatory special assessment fee of two hundred dollars,

17    due immediately.

18             Mr. van der Sloot, the sentence that you agreed to

19    in your plea agreement reflects the maximum custodial sentence

20    available under the laws of the United States -- as we call

21    it, the statutory maximum.  It is approximately two hundred

22    months more than the custodial sentence at the highest end of

23    the applicable range under the advisory guidelines.

24             In your case, the statutory maximum sentence that

25    you have stipulated represents a substantial variance upward

1    from the sentence called for by the advisory guidelines.

2            Mr. Peeples, could you please briefly explain why

3    the United States believes that a substantial variance of this

4    nature is warranted and why the plea agreement provides for

5    it.

6            MR. PEEPLES:  Yes, Your Honor, thank you for the

7    opportunity.

8            The United States submits that thirty-three to

9    forty-one months is not sufficient to meet the purposes of

10   sentencing set forth in 18, U.S.C., 3553(a).

11           A variance is warranted in this case, first, because

12   of the defendant's history and characteristics warrant a

13   sentence higher than that contemplated by the guidelines.  In

14   particular, the information provided by the defendant in his

15   proffer regarding the events in 2005 and made a part of the

16   record in this case, contain new information that is not taken

17   into account by the Sentencing Guideline calculations but

18   certainly warrants a higher sentence based on his history and

19   characteristics.

20           Second, the United States submits that the

21   defendant's extortion and wire fraud convictions deserve

22   greater punishment than the guidelines prescribe.  Because

23   Your Honor has seen a number of defendants convicted of fraud

24   come before her, but this is more than just a standard fraud

25   case.  The defendant picked his victim.  The defendant here

chose to exploit a mother, Beth Holloway, who had been

desperately searching for five years for answers about what

happened to her child.

In choosing to defraud her, Joran van der Sloot

chose his own greed over Beth Holloway's grief.

Your Honor, finally, a sentence of twenty years by

this Court ensures that regardless of anything that may happen

to his Peruvian sentences, the defendant will serve twenty

years in prison where he will not be able to cause further

harm to the public.

THE COURT:  Mr. Peeples, in determining the basis

for the substantial variance upward, did the United States

consult with the Holloway family?

MR. PEEPLES:  Yes, we did, Your Honor.

THE COURT:  Thank you.

Mr. Butler, is there anything you would like to say

about the stipulated sentence and the basis for the

substantial variance upward?

MR. BUTLER:  Nothing other than what I previously

said.  By that, I mean, Your Honor, Mr. Holloway (sic) has

complied with the terms of the plea agreement, that plea

agreement included the upward variance to two hundred forty

months, we would ask the Court to adopt the plea agreement.

THE COURT:  Thank you.  Mr. van der Sloot, I have

carefully considered whether the statutory maximum is

1   appropriate in your case.

2          Under federal law, I must impose a reasonable

3   sentence that is sufficient but not greater than necessary to

4   comply with the statutory purposes of sentencing.

5          The purposes of sentencing are to reflect the

6   seriousness of the offense, to promote respect for the law, to

7   provide just punishment for the offense, to afford adequate

8   deterrence to criminal conduct, to protect the public from

9   further crimes, and to provide needed correctional treatment

10  in the most effective manner.

11         The factors that I must consider, in addition to

12  these statutory purposes, include the nature and circumstances

13  of your offense, your history and characteristics, the kinds

14  of sentences that are available under the law, the sentencing

15  range under the guidelines, the need to avoid unwarranted

16  sentencing disparities among defendants with similar records

17  who have been found guilty of similar conduct, and the need to

18  provide restitution to victims.

19         Federal law allows me to consider not only the

20  criminal conduct charged in the indictment, extortion and wire

21  fraud, but also all of your relevant conduct.  The law defines

22  relevant conduct quite broadly.

23         Relevant conduct may include conduct that is not

24  charged in the indictment.  It includes all acts that you

25  committed, aided, abetted, counseled, commanded, induced,

1  procured, or willfully caused, as well as all reasonably

2  foreseeable acts of others in furtherance of jointly

3  undertaken criminal activity.

4          Relevant conduct may also include conduct that took

5  place outside of a statute of limitations period, so long as

6  the relevant conduct is established by a preponderance of the

7  evidence.

8          Under the law, all harm that results from your

9  relevant conduct is attributed to you today.

10          Accordingly, I have considered not only the factual

11  statements contained in your plea agreement about extortion

12  and wire fraud, but I have also considered your confession to

13  the brutal murder of Natalee Holloway and your simultaneous

14  disposal and destruction of her remains.

15          There can be no doubt that your plea agreement and

16  your proffer establish by a preponderance of the evidence the

17  matters contained therein, because your confessions are the

18  only evidence in the record before me today on those matters.

19          Mr. Butler, did you advise Mr. van der Sloot in

20  connection with his decision to enter the plea agreement that

21  the Court could consider the information in his proffer in

22  connection with imposing his sentence as part of his history

23  and characteristics?

24          MR. BUTLER:  We did, Your Honor.

25          THE COURT:  Thank you.  All right, Mr. van der

Sloot, you are differently situated from many defendants who come before the Court charged with a two hundred fifty thousand dollar fraud.  You have brutally murdered, in separate instances, years apart, two young women who refused your sexual advances.

You then took advantage of the mother of one of those young women years after the fact by attempting to sell her access to her murdered daughter's bodily remains.

Before you tried to sell her that access, you had steadfastly refused to provide complete or truthful information about your murder of Natalee Holloway, and that's an understatement, because at every opportunity, you had lied about that murder.

Your extortion and your fraud are particularly heinous because they sought to profit from a mother's grief for which you are solely and exclusively responsible.

Your extortion and your fraud are heinous in the extreme because you knew that the information that you were selling was an absolute lie.  You concocted the lie to make a profit.  You deepened your victim's grief and pain and loss to feed your own greed.

Under these circumstances, I specifically find that a Guideline sentence of approximately three years is woefully inadequate to reflect the seriousness of your offense, and that a statutory maximum sentence appropriately reflects the

1   extremity of the seriousness of your conduct.

2          Likewise, I specifically find that a Guideline

3   sentence of approximately three years is insufficient to deter

4   future criminal conduct.  Hopefully, a statutory maximum

5   sentence will deter anyone else considering preying on the

6   family members of their own murder victim from undertaking a

7   scheme similar to yours.

8          And it is clear to me that if this Court is to have

9   any hope of deterring future criminal conduct by you that I

10  must sentence you to the maximum custodial time that the laws

11  of the United States allow.

12         I have thought long and hard about whether a

13  concurrent sentence is appropriate.  It is my understanding

14  that your currently imposed Peruvian sentences will conclude

15  in approximately twenty-two years.  I have no control over

16  your Peruvian custody, and I have no control over whether

17  there is any change in the future in your Peruvian sentences.

18         But if I accept your binding plea agreement, I must

19  run your two hundred and forty months United States sentence

20  concurrent to your currently imposed Peruvian sentences.  The

21  laws of the United States do not allow me to modify that term

22  of your plea agreement.

23         If I reject your guilty plea -- if I reject your

24  plea agreement and you withdraw your guilty plea, upon your

25  conviction by a jury, I could potentially consider imposing a

1  statutory maximum sentence consecutively to, rather than

2  concurrent with, your currently-imposed Peruvian sentences.

3  That sequence of events might result in you serving more time

4  in custody which would likely deter future criminal conduct by

5  you for longer.

6       But I am not inclined to reject your plea agreement.

7  If I were to do that and you were tried and convicted of

8  extortion and wire fraud, it is not clear to me, as I sit here

9  today, whether there would be a basis to sentence you to the

10  statutory maximum for those crimes.

11       Even if there were such a basis and I sentenced you

12  to the statutory maximum to run consecutively to your Peruvian

13  sentences, one of the main benefits of the plea agreement

14  would be permanently lost, your full confession to your brutal

15  murder of your victim's daughter and your specific explanation

16  why her family has not found and will not find her remains.

17       As a term of the binding plea agreement before me

18  today, the United States has agreed not to use that confession

19  against you for any purposes other than today's sentencing.

20       Accordingly, accepting your binding plea agreement

21  today is the only way for this Court ever to consider your

22  confession to Natalee Holloway's brutal murder as part of your

23  history in connection with your sentences for extortion and

24  wire fraud.

25       Put differently, if I reject this plea agreement, in

all likelihood, you will never face a United States Court that
has considered, as part of your sentences for extortion and
wire fraud, the full measure of harm and terror that you have
brought to the Holloway family.

In evaluating your plea agreement, I also considered
very carefully whether the Court needed a presentence
investigation and presentence investigation report, even
though you waived them.  Those documents are ordinarily
helpful to the Court's understanding of an appropriate
sentence.  It's unusual for a defendant to waive them; it's
unusual for the Court not to insist on them.  But your case is
quite unusual.

In your case, based on the information that is
properly before me today, there is no amount of additional
information that could cause me to impose less than the
statutory maximum sentence, and I do not have the authority to
impose more than the statutory maximum sentence.  And there is
no amount of additional information that could cause me to
deprive the Holloway family of the public knowledge of the
information you revealed in your proffer, which was
subsequently vetted for accuracy to the extent possible by
some of the finest investigators and law enforcement agencies
in the world, under the extremely difficult and unusual
circumstances of your case.  I therefore accept the plea
agreement, find that the charge adequately reflects the

1   seriousness of your conduct and that the stipulated sentence

2   will not undermine the statutory purposes of sentencing.

3         For all these reasons, pursuant to the Court's

4   authority to impose a sentence outside the advisory guidelines

5   range, it is the judgment of the Court that the defendant,

6   Joran van der Sloot, is hereby committed to the custody of the

7   bureau of prisons to be imprisoned for a term of two hundred

8   and forty months with credit for time served in the United

9   States custody from June 8th, 2023 to run concurrently with

10   the defendant's currently-imposed Peruvian sentences.

11         Mr. van der Sloot, pursuant to the terms of the plea

12   agreement that I just accepted, and the Extradition Treaty

13   between the United States of America and the Republic of Peru,

14   signed at Lima, Peru on July 26, 2001, you will be promptly

15   removed from the United States and returned to Peru to serve

16   your United States sentence in Peruvian custody.  I will talk

17   further about that in just a minute.

18         But before I do, I want to make clear one aspect of

19   the custodial sentence that I just imposed.  As I previously

20   indicated, it is the Court's understanding that your binding

21   plea agreement is premised on the mutual understanding between

22   yourself, your attorneys and the attorneys for the government

23   that you will spend approximately the next twenty-two years in

24   Peruvian custody, meaning in a prison in Peru.

25         If circumstances should change, such that you are

out of prison in Peru earlier than anticipated, this Court

will expect you to return to the United States to serve the

remainder of your United States sentence here.  That will be

the expectation, regardless why or how you are out of Peruvian

custody, prison in Peru, earlier than anticipated.  If you are

out of prison there earlier than currently anticipated, the

Court will expect you to return to the United States to serve

the balance of your custodial sentence regardless whether

you're paroled, you're released earlier, you're placed on

probation or supervised release in Peru, your Peruvian

sentence is reduced, the laws of Peru change or your Peruvian

sentence otherwise changes.

I specifically find that it will not satisfy the

statutory purposes of the sentence that I just imposed for

your Peruvian custodial sentence to be reduced, probated,

paroled or otherwise diminished and for you to use that

reduction to skirt your responsibility to serve the remaining

portion of your United States sentence in the United States.

Do you understand?

DEFENDANT VAN DER SLOOT:  Yes, Your Honor.

THE COURT:  Thank you.  Because you have pleaded

guilty to offenses for which an identifiable victim has

suffered pecuniary loss, the Mandatory Victim's Restitution

Act requires that you pay restitution.  You do not dispute

that you received twenty-five thousand one hundred dollars

1  from Beth Holloway, you agreed to restitution in the plea

2  agreement, so you are ordered to pay restitution in that

3  amount to her and your restitution obligation is due and

4  payable in full immediately.

5        When I enter judgment in your case later today, I

6  will, under the terms of your plea agreement, also enter a

7  final order of forfeiture, so that the United States

8  Government may remit to Beth Holloway any monies that it

9  collects from you to satisfy that restitution obligation.

10        Mr. Peeples, does the United States at this time

11  have a final proposed order of forfeiture?

12        MR. PEEPLES:  Yes, Your Honor.  May I approach?

13        THE COURT:  Please file it.

14        MR. PEEPLES:  (Indicating).

15        THE CLERK:  (Indicating).

16        THE COURT:  All right.  Mr. Peeples, you filed this

17  just now, but do you acknowledge that you previously made it

18  available to the Court for me to review?

19        MR. PEEPLES:  Yes, Your Honor, and with defense

20  counsel.

21        THE COURT:  Great.  Thank you.  Mr. Butler, just to

22  confirm, you have seen this proposed order before today?

23        MR. BUTLER:  Yes, Your Honor.

24        THE COURT:  And your client has no objection to its

25  entry?

1          MR. BUTLER:  No, Your Honor.

2          THE COURT:  I'm not imposing a fine based on the

3    defendant's inability to pay, but, Mr. van der Sloot, you are

4    ordered to pay to the United States the special assessment fee

5    of two hundred dollars which is due immediately.

6          On release from imprisonment, you will be placed on

7    supervised release for a term of three years as to Counts One

8    and Two separately but to run concurrently with each other.

9          While on supervised release, you will have to comply

10   with the standard conditions of supervised release in this

11   court.  Those will be set out in full in your judgment which I

12   encourage you to read very closely.  You also must comply with

13   the following special conditions which also will be set out in

14   full in your judgment.

15         First, you must cooperate in the collection of DNA

16   under the administrative supervision of the probation officer;

17         Second, if under any circumstances you are released

18   from or you escape a Peruvian prison before June 9th, 2043,

19   including on parole, probation or supervised release, you are

20   ordered to make your release known to the United States

21   District Court for the Northern District of Alabama.  Before

22   you leave today, you will be provided contact information to

23   satisfy this obligation, if it becomes necessary;

24         Three, until the sentences that I have imposed today

25   are fully served and satisfied, you must not reenter the

United States without the express permission of the Secretary
of Homeland Security for the United States.  You are advised
that because of your guilty plea today, you may be forever
refused admission to the United States, but you are required
not to reenter without the permission that I just described
until the sentences imposed today have been fully and
completely served.  Should you reenter the United States for
any reason or for any purpose before that date, you must
report to the nearest United States Probation Office within
twenty-four hours of your arrival.

Having considered the advisory guideline
computations and taken them under advisement, as well as the
binding plea agreement that I have accepted, I find that the
sentence is sufficient but not greater than necessary to serve
the statutory purposes of sentencing.

I further find, for reasons that I have explained,
that it is a reasonable sentence when considering each and all
of the sentencing factors found at 18, U.S.C., 3553(a).

Mr. Peeples, does the United States have any
objections?

MR. PEEPLES:  None, Your Honor.

THE COURT:  Mr. Butler.

MR. BUTLER:  No, Your Honor.

THE COURT:  All right.  Mr. van der Sloot, I am
required to advise you of your appeal rights.  You have the

right to appeal the sentence within fourteen days if you
believe that it is in violation of federal law.  Your plea
agreement includes an appeal waiver and ordinarily those are
enforceable.  But if you believe that yours is unenforceable,
you are entitled to present that theory to the appellate
court.  With very few exceptions, any appeals must be
commenced within fourteen days of the entry of judgment in
your case which will occur today.  If you want to appeal, do
not delay.  Discuss it with Mr. Butler and Mr. Gibson right
away.  If you are unable to pay the cost of an appeal, you may
apply for leave to appeal in forma pauperis and for the
appointment of counsel.  If you are allowed by the court to
proceed in forma pauperis, upon your request, the clerk of the
court will assist you in preparing and filing a notice of
appeal.

Mr. van der Sloot, have you been advised by the
Court and by your counsel about your appellate rights?

DEFENDANT VAN DER SLOOT:  Yes, ma'am, and I waive my
appeal.

THE COURT:  Thank you.  I understand that you wish
to waive your rights to appeal and that that waiver is knowing
and voluntary and that you are waiving your rights to appeal
both your conviction and your sentence; is that correct?

DEFENDANT VAN DER SLOOT:  Yes, Your Honor.

THE COURT:  Thank you.

1    Mr. Butler, is there anything you would like to say

2  before I remand the defendant?

3    MR. BUTLER:  Yes, Your Honor.  Pursuant to the

4  Extradition Treaty issued between the United States and the

5  Republic of Peru, and the May 10th Peruvian Supreme Court

6  resolution, allowing for his extradition, Mr. van der Sloot

7  was temporarily surrendered by the Country of Peru to the

8  United States and to the U.S. authorities to resolve this

9  matter and any possible appeal.

10    Now that the criminal proceedings have concluded and

11  Mr. van der Sloot has knowingly and voluntarily given up his

12  right to appeal, the judgment and sentence, we believe that

13  all terms and conditions of that treaty have been fulfilled.

14  Therefore, we would ask the Court to enter judgment as soon as

15  is practical and to direct the United States to comply with

16  the terms of the agreement and expeditiously return Mr. van

17  der Sloot to Peru.

18    THE COURT:  Thank you.  Mr. Peeples, to effectuate

19  the order and judgment that the Court will enter today, and to

20  satisfy the obligations of the United States under the plea

21  agreement and the Extradition Treaty, the United States is

22  ordered to remove Mr. van der Sloot from the United States as

23  soon as is reasonably possible and to take all reasonable

24  measures to expedite his return to Peruvian custody.

25    Mr. van der Sloot, in a moment, I will remand you to

1    the custody of the United States Marshal Service.  After I

2    enter judgment in your case, I do not control how and when you

3    are removed from the United States.  I am assured by the

4    marshal service that you will not be here any longer than is

5    necessary to gather the appropriate international papers that

6    are required to remove you from this country and return you to

7    Peru.

8           To effectuate the orders of the Court, I will today

9    liaise with the coordinate branches of the United States

10   Federal Government to ensure that you are removed from the

11   United States and returned to Peru as quickly as is reasonably

12   possible.  Do you understand?

13          DEFENDANT VAN DER SLOOT:  Yes, Your Honor.

14          THE COURT:  Mr. van der Sloot, you are remanded to

15   the custody of the marshal service and we are adjourned.

16          (End of proceedings.  10:30 a.m.)

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E


    I hereby certify that the foregoing is a correct
transcript from the record of the proceedings in the above-
referenced matter.



_____
Teresa Roberson, RPR, RMR